HON. AMASA COBB, CHIEF JUSTICE.
" SAMUEL MAXWELL, } JUDGES.
" T. L. NORVAL,

THOMAS PRICE, APPELLANT, V. KEARNEY CANAL &
WATER SUPPLY COMPANY, APPELLEE.

[FILED MARCH 11, 1890.]

1. **Canals:** CONTRACT FOR CONSTRUCTING: SET-OFF. Under a
contract for the construction of a canal and water supply in sec-
tions and subdivisions, at fixed rates of construction per cubic
yard, and for the haul of earth, under written specifications, in
a good, workmanlike manner, under directions of the Canal
& Water Supply Company and its engineer in charge, twenty
per cent of the contractor's pay being retained from the estimated
settlements of completed sections, and the contractor having
completed the work to the final section, which he claimed to
have completed, the company and its engineers claiming other-
wise, placed workmen and teams thereon and finished it to
their own satisfaction. In an action by the contractor for pay

3            [33]

on the contract and for extra work, and for damages against the company, *held*, that the defendant could not offset its counterclaim for completing unfinished work against the reserved twenty per cent earned by the plaintiff without establishing the amount and value of the work both completed and incomplete by the contractor as well as that finished by the company according to the terms of the contract.

2. ——— : ——— : ———.  *Held*, also, that the company could not offset against the reserved twenty per cent an amount which, in the opinion of engineers and of expert witnesses, it would cost the company to reconstruct and restore sections accepted and estimated as complete by engineers in charge, and of which eighty per cent of the contract price had been paid by the company to the contractor.

APPEAL from the district court for Buffalo county. Heard below before GROFF, J.

*N. C. Abbott*, and *Harwood, Ames & Kelly*, for appellant, cited: *C. & G. E. R. Co. v. Vosburgh*, 45 Ill., 311; *Donlin v. Daegling*, 80 Id., 608; *Wolff v. McGavock*, 29 Wis., 290; *School District v. Estes*, 13 Neb., 52; *Mercer v. Harris*, 4 Id., 77; *School District v. Randall*, 5 Id., 408; *Banister v. Patty*, 35 Wis., 215.

*Calkins & Pratt*, and *T. M. Stuart*, contra, cited : *School District v. Estes*, 13 Neb., 52; *Kidwell v. R. Co.*, 11 Gratt. [Va.], 676; *Barker v. R. Co.*, 27 Vt., 766; *Boody v. R. Co.*, 3 Blatchf. [U. S.], 25; *Henegan v. U. S.*, 17 Ct. Cl., 275; *C. & G. E. R. Co. v. Vosburgh, supra; Leavers v. Cleary*, 75 Ill., 349; *Nickerson v. R. Co.*, 17 Fed Rep., 408; *Topliff v. Topliff*, 122 U. S., 121; *Nesbit v. R. Co.*, 2 Spears [S. Car.], 697*; *Gallagher v. D. C.*, 19 Ct. Cl., 564; *Church v. Florence Iron Works*, 45 N. J. L., 129; *Norton v. Browne*, 89 Ind., 333; *Smith v. Bristol*, 32 Ia., 24; *McGrann v. R. Co.*, 29 Pa. St., 82; 33 Id., 530; *Williams v. Fitzmaurice*, 3 H. & N. [Eng.], 844; *Mellen v. Ford*, 28 Fed. Rep., 639; *W. U. R. Co. v. Swift*, 75 Ill., 496; *Leavenworth v. Rankin*, 2 Kan., 357.

Cobb, Ch. J.

The plaintiff brought his action against the defendant, as a private corporation, under a contract dated September 5, 1882, for the construction of the defendant's canal according to the plat and survey of J. B. Buckley, engineer, made for the defendant, and the specifications thereto annexed, at and for the prices specified, to-wit: The east mile of section 1, and all of sections 2, 3, 4, 5, 6, 7, 8, and 9, at nine cents per cubic yard, the remainder of section 1 at fifteen cents per cubic yard. For every 100 feet haul, after the first 100 feet, one cent per cubic yard, which the defendant agreed to pay upon the conditions of its specifications.

The plaintiff alleges that the canal was laid out by the defendant, as shown by its plats and profiles, through the following lands in Buffalo county, to-wit: Sections 1 and 2, in township 8 north, range 18 west; also section 6, township 8 north, range 18 west; also, sections 31, 32, 33, 34, 35, and 36, township 9 north, range 16 west; also, sections 4 and 5, township 8 north, range 16 west; that the defendant, by its engineer, made several changes in the location and line of the canal, and in the size and manner of executing the work during its construction, thereby increasing the width of the canal at the bottom, and the distance the dirt [earth] was to be moved; that by the contract the plaintiff agreed to construct the earthwork of that portion of the line between and including section station 13 and 831, as then platted and surveyed, in accordance with the plat and specifications, and in consideration thereof the defendant agreed to pay fifteen cents for every cubic yard of earth entering into the construction of the canal, including excavation and embankment and fill for the west 5,000 feet in length of section 1, and the sum of nine cents per cubic yard of earth for the remaining length thereof, being the east mile of section 1, and all of sections 2, 3, 4, 5, 6, 7, 8 and

9, excluding the work necessary to carry the water over and across certain ravines in the flumes.

That in pursuance of the contract the plaintiff on September 10, 1882, commenced the construction of the canal under the directions of the defendant and its engineer and completed the whole, according to contract and the direction of defendant, on May 1, 1884; that on the west 5,000 feet there were excavated 18,000 cubic yards of earth, and 9,000 cubic yards of earth were placed in the embankments of the same portion; that on the remaining portion, the east mile of section 1, and all of sections 2, 3, 4, 5, 6, 7, 8, and 9, he excavated 240,000 cubic yards, and placed 100,000 cubic yards in the embankments thereon, under the direction of the defendant, and accepted by it, exclusive of the extra work to be mentioned; that there is due plaintiff on said work, within the terms of the contract, exclusive of extra work done by direction of the defendant, $24,340.

II. That by the terms of the contract the first mile of the canal was to have been 30 feet wide at the bottom and no more, but afterwards the defendant required it to be constructed 31 feet wide at the bottom, which was done, and the defendant was informed of the extra work, performed on that account, and was charged therefor accordingly the sum of $500, no part of which has been paid.

III. That by the terms of the contract the plaintiff was to construct all embankments of the canal at and next to the excavations thereof, and that work was so performed, but subsequently during the construction thereof the defendant, disregarding the contract, directed the embankments to be constructed with a shelf or berme bank, on each side, of six feet, and the embankments were so altered, removed, and constructed, which the defendant was informed was extra work, performed on that account, involving the removal of 258,000 cubic yards of earth, at three cents per yard, and was charged therefor accordingly the

sum of $7,740, and which the defendant agreed to pay a reasonable sum therefor.

IV. That by the terms of the contract, at a certain point on the line of the canal, at station —, the line was to be constructed around the side of a large sand hill with such excavation and embankments as to render the work convenient and easy, and through such earth and material as could be easily removed, which line was subsequently abandoned and a new one laid out, to be constructed by a heavy cut through the sand hill and through earth and material more laborious and expensive to move than that of the original line contracted for, which change was a departure from and a violation of the contract, and was so constructed by the order of defendant, involving an excavation of 4,000 cubic yards of earth, at thirty-five cents per yard, and was charged therefor accordingly, as extra work, at the sum of $1,400, and which the defendant agreed to pay a reasonable sum therefor.

V. That by the terms of the contract there were certain road crossings to be made for the convenient crossing of the canal, and a certain excavation and fill to be made at a point where the Union Pacific railroad crosses the line of the canal, at which crossings and point, to be made, excavated, and filled, the defendant, at the time of construction, refused and neglected to specify, lay out, and plat, and to stake out and cross-section the work so required to be constructed, until after the plaintiff had finished that portion of the canal, and had moved his teams and laborers to other portions of the work at a considerable distance therefrom ; that subsequently the defendant demanded the completion of the work, which was done at an extra expense to the plaintiff than it would have cost at the time of constructing the work at such points, involving an excavation of 4,000 cubic yards of earth, and the moving of teams, at twenty cents per yard, and was extra work performed on that account and charged accordingly at the sum of $800, and has not been paid for.

VI. That by the terms of the contract and the profile of the canal, by which the plaintiff entered upon the contract, that portion between stations 705 and 708–2 was through a deep run or draw in the surface of the land, through which the defendant intended to construct a flume for the canal, and was no part of plaintiff's contract, and with which plaintiff had nothing to do either in construction or otherwise, but subsequently, at the request of defendant, he filled said run and draw, and constructed the canal across the same, involving a fill of 7,000 cubic yards of earth in embankment at twenty-five cents per yard, and was extra work, performed on that account, and charged accordingly at the sum of $1,750, which was accepted by defendant, and a reasonable sum agreed to be paid therefor, no part of which has been paid.

VII. That by the terms of the contract and the profile of the canal, by which the plaintiff entered upon the contract, that portion between stations 744 and 748 was through a deep run or draw in the surface of the land through which the defendant intended to construct a flume for the canal, and was no part of plaintiff's contract, and with which the plaintiff had nothing to do, either in construction or otherwise, but subsequently, at the request of defendant, he filled said run and draw and constructed the canal across the same, involving a fill of 6,000 cubic yards of earth in embankment at twenty-five cents per yard, and was extra work performed on that account, and charged accordingly at the sum of $1,500, which was accepted by defendant, and a reasonable sum agreed to be paid therefor, no part of which has been paid.

VIII. That in addition to the several items included in the contract, there was a part of the canal between stations 824 and 830–2, through a deep run or draw, requiring a large fill and embankment, which plaintiff constructed, involving the placement of 29,000 cubic yards of earth, for which, and the extra haul thereof, the defendant agreed to

pay twelve cents per yard, amounting to $3,480, and which the defendant accepted as extra work.

IX. That by his contract he was only required, in making slopes in excavation, to make the same as smooth as he conveniently could 'with plows and scrapers, in the ordinary work of excavation, in pursuance of which the banks in the first five miles were sloped accordingly. That in the remaining eleven miles, at the special request of defendant, he caused the banks to be sloped very smooth and accurate by hand labor, which required extra men and labor, and was worth $200 per mile, amounting to $2,200, no part of which was contracted for, and all of which was accepted by the defendant, and a reasonable sum agreed to be paid therefor.

X. That during the month of November, 1882, while the plaintiff was in the prosecution of his contract, the defendant refused to permit him to continue said work, and refused to lay out and cross section the line for the canal, so that he could proceed with the construction thereof, and did stop him, and refused to permit him to continue, while he had a large number of men and teams employed on the work for which he had agreed to pay for team and man $2.50 per day, and men, each, $1.50 per day; and by reason of such refusal to allow the continuance of the construction he was obliged to discontinue his work on the canal for a long time; and when permitted to resume his work, teams and men had become scarce, and feed and provisions more expensive, and wages had increased, so that a team and man were employed at $3 50 and $4 each per day, and men engaged on the work $1.75 and $2 per day each; that after such delay he employed 3,000 days' labor by team and man, for which he paid $3.75 per day, and 1,000 days' labor, other than team labor, at $1.90 per day, all of which was caused by the delay produced by the defendant, by reason of which the plaintiff was damaged in the sum of $4,000.

The plaintiff alleges that of said work the defendant has paid $22,500, and no more, and that the balance due him amounts to $35,000 and is unpaid, for which he demands judgment. The plaintiff also alleges that a true statement of his account, of the amount of labor done by him on said canal, allowing all credits thereon, settling for the time when said labor was performed and completed, with a correct description of the property upon which the same was done, was made; and after duly verifying the same by affidavit, on October 21, 1884, filed the same in the county clerk's office of Buffalo county, where the canal is located and the labor was performed, and caused the same to be recorded there. The plaintiff asks judgment for said $35,000 and interest, and costs, and that the same, or so much as shall be found to be for work and labor, on said canal be decreed to be a lien thereon, and, if not paid within a reasonable time, be sold to pay the said sum and interest thereon, and costs.

"SPECIFICATIONS GOVERNING THE CONSTRUCTION OF THE KEARNEY CANAL BY THE KEARNEY CANAL AND WATER SUPPLY COMPANY.

"1. The first mile of the canal is to be thirty feet wide on the bottom, with side slopes of one to one in the excavation, and banks are to be built on both sides of the excavation sloping one and one-half to one, six feet wide on the top and six feet high above the bottom or grade of the canal. The balance of the canal is to be twenty-one feet wide on the bottom with slopes and banks as above.

"2. Surplus earth may be wasted except where it may be needed in constructing embankments. In such places the contractor will be required to haul such surplus earth one hundred (100) feet without extra compensation. For earth hauled a greater distance he shall receive so much per cubic yard extra for each one hundred feet, as may be agreed upon by the parties hereto.

" 3.  The portion of the canal to be built at the present time begins No. 13, according to the surveyor's profile on file, and is divided into nine sections, as follows:

" Section numbered one begins at station 13 and ends at station 111½ and is about one mile and 5,000 feet long.

" Section numbered two begins at station 113 and ends at station 225 and is about 2 miles 280 feet long.

" Section numbered three begins at station 225 and ends at station 331 and is about 2 miles long.

" Section numbered four commences at station 331 and ends at station 437 and is about 2 miles long.

" Section numbered five begins at station 437 and ends at station 543 and is about 2 miles long.

" Section numbered six begins at station 543 and ends at station 649 and is about 2 miles long.

" Section numbered seven begins at station 649 and ends at station 755 and is about 2 miles long.

" Section numbered eight begins at station 755 and ends at station 830 and is about 1¼ miles long.

" Section numbered nine begins at station 830 and ends at station 867½ and is about ¾ mile long.

" 4.  Parties proposing to do the above work must state the section or sections for which they bid and the price per cubic yard, when the haul does not exceed 100 feet, and the extra price per cubic yard for moving dirt after the first 100 feet.

" 5.  Work must be commenced on section 1 within ten days after the contractor is notified of the work being awarded to him, and must be completed on or before the 20th day of October, 1882.

" 6.  Work must be commenced on sections numbered 2, 3, 4, 5, 6, 7, 8, and 9 within ten days after the acceptance and approval by the mayor and council of the city of Kearney of section 1, and must be completed on or before the first day of June, 1883.

" Provided, that if said section 1 shall not be accepted

on or before the 30th day of October, 1882, then the time
for the completion of said sections 2, 3, 4, 5, 6, 7, 8, and
9 shall be extended so as to give seven full months' time
between the date of said acceptance of section 1 and the
final completion of said sections 2 to 9 inclusive.

" 7. The company will pay the contractors eighty per
cent of the estimated cost of each mile on its completion
and acceptance, each mile to be completed and accepted in
its proper order, beginning with the first: the balance will
be. paid on the completion of the contract and its acceptance
by the company and engineer in charge of the work, sub-
ject to provisions hereinafter contained covering liens. A
good and sufficient bond will be required for the faithful
performance of each contract.

" 8. The company reserves the right to place men and
teams on the work in case the contractor is not making
satisfactory progress and is not liable to complete his work
within the time specified, and will charge the expense of
such men and teams to the contractor and deduct the same
from the amount of his contract.

" 9. The company reserves the right to make any change
in the line of the canal they may deem necessary and
proper during the progress of the work, and such change
shall not in any way affect the validity of any contract or
entitle any contractor to extra compensation.

"10. The entire work to be done in a good and work-
manlike manner under the direction of the company and its
engineer in charge of the work.

" 11. Parties who are awarded the whole, or any part,
of the work on this canal shall, before commencing on the
same, enter into a written agreement with the company,
binding themselves to complete said work within the time
and in the manner specified, and to save the company harm-
less from all liability on account of the liens of any laborer,
material man, contractor, or subcontractor.

" 12. Every contractor who shall be awarded any part of

said labor shall keep full and accurate account of all material furnished, and full and complete time and pay rolls of all labor performed upon said contract, and whenever any sum shall become due to any contractor by the terms hereof, before the time shall have elapsed in which liens may be filed for labor and material done and furnished, the said contractor shall furnish said company full and complete acquittances and receipts for all material furnished and labor done, which might be the subject of a lien against said company's property, before he shall be entitled to receive any part of the compensation for his work.

" 13. All contractors to whom shall be awarded any part of said work shall pay laborers, teamsters, mechanics, and subcontractors employed, as often as once in thirty days, and within forty days from the time of the performance of said labor, and the failure of any contractor so to do, or to pay any bill which might become the subject of a lien when due, shall entitle the company performing said work to cancel said contract and pay such claims, reserving, in addition to the amount of said claims, ten per cent of the whole amount earned by said contractor as fixed and liquidated damages for non-fulfillment of said contract.

" The company will reserve the right to pay all overdue claims which might become the subject of a lien against said company and deduct the same from the compensation due, or to become due, any contractor, together with all expenses, costs, and charges of any lien or suits brought against said company by reason of any lien, with attorney's fees and ten per cent as fixed and liquidated damages."

A written contract was then made and entered into between the parties, to-wit:

" This agreement, made and entered into this fifth day of September, 1882, by and between Thomas Price, of Bennett, Lancaster county, Nebraska, party of the first part, and the Kearney Canal and Water Supply Company, Kearney, Nebraska, party of the second part,

"Witnesseth: That the party of the first part, in consideration of the covenants and agreements hereinafter contained to be kept and performed by the party of the second part, agrees to construct the canal of the party of the second part according to the improved plat and survey of J. D. Buckley, engineer, made for the party of the second part, and specifications hereto annexed and which are made a part of this contract, at and for the price following, viz:

"The east mile of section 1 and all of sections 2, 3, 4, 5, 6, 7, 8, and 9, nine (9) cents per cubic yard.

"The remainder of section 1, fifteen (15) cents per cubic yard.

"For every 100 feet haul after the first 100 feet, one (1) cent per cubic yard.

"And the party of the second part agrees, in consideration of the covenants and promises herein contained on the part of the party of the first part, to pay the price aforesaid to the party of the first part, at the time and upon the conditions specified in the specifications hereto annexed.

"Signed the day and year first above written.

"Thomas Price.

"[seal.]      Nathan Campbell, President.

"F. G. Keens, Secretary.

    · "Kearney Canal and Water
          Supply Co."

The defendant answered, admitting that it was a corporation, and that it entered into the contract with the plaintiff on September 5, 1882, as alleged.

II. Denies the allegations as to contract price, but alleges that the defendant agreed to pay fifteen cents for each cubic yard of earth excavated in the first, or west, 5,000 feet of the first mile, and nine cents for each cubic yard of excavation in the remaining part of said canal. That plaintiff was to receive *one* cent for each cubic yard of earth moved over 100 feet, but aside from that, he was to put

the waste earth in embankments where required free from any charge.

III. Admits that the plaintiff commenced work September 10, 1882, but denies that he completed the work according to the contract, and the direction and instructions of defendant, and denies that the plaintiff on the west 5,000 feet, excavated 18,000 cubic yards of earth, and embanked 9,000 cubic yards of earth, or any greater number than 23,066, and denies that the plaintiff, in the construction of the remainder, excavated 240,000 cubic yards of earth, and embanked 100,000 cubic yards of earth, or any greater number than 233,323.

IV. Denies each and every allegation in the first cause of action contained except that specially denied or admitted.

2. For a first answer to the second cause of action, denies each and every allegation therein.

II. For a second answer to the same, alleges that on November 16, 1882, the plaintiff presented his bill for the work done on section 1, in which he claimed to have excavated 23,066 cubic yards in the west 5,000 feet in the first mile, and to have removed 51 cubic yards more than 100 feet, and it was then agreed that he removed that amount of earth and was entitled to $3,460.41, of which 80 per cent was due, and the balance to become due when the work was completed, in compliance with which the 80 per cent was paid to the plaintiff on said settlement.

3. For a first answer to the third cause of action, denies that by the terms of the contract he was to construct all embankments at and next to the excavations thereof, but that the plaintiff agreed to construct the canal in a good, workmanlike manner, which required the leaving of a berme between the excavation and embankment of at least four feet.

I. For a second answer to the same, denies each and every allegation therein.

4. For a first answer to the fourth cause of action, denies each and every allegation therein.

II. For a second answer to the same, alleges that during the construction of the canal the defendant changed the line by abandoning a heavy cut of one-half mile, around a hill, and made a deep cut for a short distance into a ravine; that it would cost no more per cubic yard to excavate upon the new line than upon the original, but that plaintiff demanded as extra compensation for such change $200, which was paid on September 22, 1883, in full satisfaction.

5. For answer to the fifth cause of action, admits that the excavation to be made at the point where the Union Pacific railway crosses the line of the canal was not ready for the plaintiff at the time that the adjacent portion of the canal was excavated, but that defendant was compelled to await the construction of a bridge by the railway company, and that no delay was caused by its fault, but that it was one of the incidents of the work the plaintiff had undertaken.

II. For a second answer to the same, alleges that it is wholly untrue that the plaintiff removed 4,000 cubic yards of earth at said crossing, or that it was worth twenty cents or any greater sum than nine cents per cubic yard.

III. For a third answer to the same, the defendant has fully settled with the plaintiff for the work done on that portion of the canal.

6. For answer to the sixth cause of action, admits that the original plan contemplated a flume between sections 705 and 707–2, but that defendant had, by the terms of the contract, the right to vary the plan and line of the work, and that plaintiff solicited the abandonment of the flume and the construction of a fill, and permission to do the work, which was done accordingly, and he made no extra claim or charge therefor, and that it was not worth per cubic yard any greater sum than nine cents, which was settled and accounted for with the plaintiff.

7. For answer to the seventh cause of action, admits that the original plan contemplated a flume between stations 744 and 748, but that the defendant had the right, as stated, to vary the plan and line of the work, and that the plaintiff solicited the abandonment of the flume and the construction of a fill, and permission to do the work, which was done accordingly, and he made no extra claim or charge therefor, and that it was not worth per cubic yard any greater sum than nine cents, which was settled and accounted for with the plaintiff.

8. For answer to the eighth cause of action, denies each and every allegation therein.

II. For a second answer thereto, alleges that by the terms of the contract the work between stations 824 and 830-2 was to have been embankment and not a flume, and that the plaintiff was to have constructed the same at nine cents per cubic yard of earth placed in embankment.

9. For answer to the ninth cause of action, denies each and every allegation therein.

10. For answer to the tenth cause of action, alleges that the plaintiff, after the construction of section 1, was to wait, before begining the remainder of the work, until the city of Kearney, which had promised to donate to defendant a certain sum of money, should, by its officers, inspect said first section and ascertain if a sufficient flow of water could be obtained, by means of the canal, from the Platte river, and that the delay of defendant complained of was caused by waiting for such inspection, which the plaintiff agreed to.

II. The defendant denies every allegation not hereinbefore admitted.

11. The defendant alleges that the plaintiff excavated upon the first mile of the canal 23,066 cubic yards of earth, and moved 51 cubic yards of earth more than 100 feet; that from the end of the first mile to stations 787x80 he moved 233,323 cubic yards of earth, and no more, and

that the defendant has paid to plaintiff 80 per cent of the contract price for such excavation, which was fully settled and agreed by and between them, amounting to $19,567.63; that the plaintiff has commenced the construction of the remainder of the work, but has wholly failed, neglected, and refused to complete the same; that in addition to the sum so paid to the plaintiff, the defendant has paid $6,853.50 advanced to plaintiff on account of work by him promised and agreed to be done, but which he has wholly failed to complete.

12. That the changes made by defendant in the line of the canal, taken altogether, were favorable to the contractor, who was able to do the work much more cheaply on that account.

13. The defendant alleges that the plaintiff wholly failed to commence or complete his work according to the time in the contract specified, and that the work is not completed; that he has wholly failed to construct the same in a good, workmanlike manner, or to make the banks as high as required, or to give them the proper slope, or the necessary width at the top, or to give the banks of the canal in the excavations the slope required by the contract, and failed to construct the same as wide at the bottom as required. That the work is worth to defendant $10,000 less than it would have been if constructed in a good, workmanlike manner, and will cost defendant that sum to complete it in such manner according to the plans and specifications agreed to by plaintiff.

14. Defendant admits that plaintiff filed a pretended lien against the property, but alleges that the same was false and fraudulent, and that nothing was due or owing to him thereon.

15. Defendant denies every allegation of the plaintiff not hereinbefore admitted or denied, and prays judgment, that an accounting be had of the transactions under the contract, that the defendant have judgment for the amount

overpaid, and for damages by failure of plaintiff to complete the contract in the sum of $16,853.50, that the lien against the property be declared void and canceled, and for general relief.

The plaintiff replied, denying each and every averment, allegation, and statement of new matter in said answer contained.

By an agreement of the parties, the cause was submitted to the court without the intervention of a jury, and was heard upon the evidence and argument of counsel, and, having considered the same, the court found upon the several causes of action set forth :

I. Upon the issues formed on the first cause of action that the plaintiff is not entitled to compensation for earth placed in embankment which has been once measured and paid for in excavation, and that the work done by plaintiff, if finished according to contract, would amount, at the contract price, to $4,475.89, over and above that paid him by defendant.

II. The court found upon the issues formed on the second cause of action for the defendant.

III. Upon the third cause of action for the defendant.

IV. Upon the fourth cause of action for the defendant.

V. Upon the fifth cause of action for the defendant.

VI. Upon the sixth cause of action for the defendant.

VII. Upon the seventh cause of action for the defendant.

VIII. Upon the eighth cause of action for the defendant.

IX. Upon the ninth cause of action for the defendant.

X. Upon the tenth cause of action for the defendant.

XI. Upon the issues formed upon the defendant's answer found there was due the defendant upon the counterclaim set up in said answer, $4,475.89 and that the defendant was entitled to set the same off against the amount which would have been due the plaintiff had he completed the work according to contract.

4

XII. The court found upon all the issues joined for the defendant, to each of which the plaintiff excepted, and to the finding that the defendant is entitled to recover no more than $4,475.89, upon the facts set up in its answer, the defendant excepted.

The petition was dismissed with judgment for the defendant's costs.

The several causes of action of the appellant may be classed:

I. For work on the construction of the canal at the contract price.

II. For extra work not included in the contract, but incident to it.

III. For damages on account of delay, caused by the appellee.

The plaintiff, in his first cause of action, alleges that the defendant, by its engineer, made several changes in the location and line of the canal, and in the manner of executing the work during its construction, increasing the width of the canal at the bottom, and increasing the distance the earth was required to be moved; that by the contract he agreed to construct the earth work of that portion of the line, including section stations 13 and 831, as then platted and surveyed, in accordance with the plat and specifications, to be paid therefor fifteen cents for every cubic yard of earth entering into the construction, including excavation and embankment, and fill, for the west 5,000 feet in length of section 1, and nine cents per cubic yard of earth for the remaining length, being the east mile of section 1 and all of sections 2, 3, 4, 5, 6, 7, 8, and 9, excluding the work necessary to carry the water over and across certain ravines, in flumes, which the plat showed was to be so carried.

That in pursuance of his contract, the plaintiff, on September 10, 1882, commenced the construction of the canal, under the direction of the defendant and its engineers, and

completed the whole on May 1, 1884; that in the west 5,000 feet of section 1 there were excavated 18,000 cubic yards of earth, and 9,000 cubic yards were placed in embankments of the same portion of the line; that on the other portion, the east mile of section 1, and all of sections 2, 3, 4, 5, 6, 7, 8, and 9, he excavated 240,000 cubic yards and placed 100,000 cubic yards in the embankments thereon, by direction of, and accepted by defendant, exclusive of extra work, and that there is due the plaintiff therefor, within the terms of the contract, exclusive of his claim of extra work, $24,340.

The defendant's answer to this cause of action denies that it agreed to pay fifteen cents per cubic yard for earth excavated in the first or west 5,000 feet of the first mile, and nine cents for each cubic yard of excavation in the remaining part, but that plaintiff was to receive one cent for each cubic yard moved over 100 feet, but, aside from that, he was to put the waste earth in embankments, where required, free of any charge.

The defendant admits that the plaintiff commenced the work September 10, 1882, but denies that he completed it according to the contract or the direction of defendant, and denies that on the west 5,000 feet he excavated 18,000 cubic yards of earth and placed in embankments 9,000 cubic yards or any greater number than 23,066; and denies that, in the construction of the remainder, he excavated 240,000 cubic yards and placed in embankments 100,000 cubic yards, or any greater number than 233,323; and denies each and every allegation in this cause of action, except that specially denied and admitted.

Upon the issues thus formed the court below found that the plaintiff was not entitled to pay for earth placed in embankments, which had once been measured and paid for in excavation, and that the work done by plaintiff, if finished according to contract, would amount, at the contract price, to $4,475.89, over and above that paid him by the defendant.

In reviewing this finding of the court, I will first consider that part which finds that the plaintiff is not entitled to compensation for earth placed in embankments which has once been measured and paid for in excavation. By reference to the contract it will be seen that no rule of measurement is therein provided, nor any language used which it is supposed furnished the court with either a theory or facts upon which to base its finding. The language is, "to construct the canal  *  *  *  at and for the price following:" (certain sections) "nine cents per cubic yard."  *  *  *  "For every 100 feet haul after the first 100 feet, one cent per cubic yard." If this may be said to indicate any criterion tending to settle the question, it would seem to be that the earth hauled should be measured, and not merely the excavation from which it was taken while the words quoted "to construct a canal" would seem to indicate that the entire canal, as well that which consisted of excavation, as that in embankment, should be measured. But it will also be observed by the contract that the work is to be constructed "according to the approved plat and survey of J. D. Buckley, engineer, and the specifications annexed and made a part of the contract." This language, as used, refers to the manner of construction, and not, as I understand it, to the rule of measurement or the rate of compensation. Attached to the record and identified by the engineer are the specifications of the contract, but there are no delineations of a plat and survey accompanying the bill of exceptions, or reference made to any by the witnesses in the case, so far as observed. The words used in the specifications are identical with those of the contract as to this question.

But while this finding of the trial court could not have been based upon the words of the contract or the specifications, I am yet of the opinion that it is correct, and ought to be sustained. The evidence shows, without exception, that, from the commencement of the work to the

time when the plaintiff claims it was completed, upon stated intervals, upon the completion of portions of the work, he presented his claim for estimates for pay on work completed and upon which the engineer made inspection and measurement, and in all instances, to the knowledge and acquiescence of the plaintiff, the engineer measured the work by the excavations only, and not by the embankment, basing his estimates and computing the amount due on excavations, which estimates were accepted by the plaintiff and the amounts were received by him, less the twenty per cent retained under the terms of the contract until the completion of the work. The evidence to this effect, introduced by the defendant, and claimed to sustain the proposition of the court below, is abundant and conclusive, and fully justified the court that the admeasurement and compensation were understood, adopted, and acquiesced in by both parties to the contract. It was therefore conclusive of the question of the rule of measurement and compensation involved.

The other proposition, of the finding of the court, is that the work done by the plaintiff, if finished according to the terms of the contract, would amount to $4,475.89 over and above that paid him by defendant. The meaning of this finding is that the work actually completed by the plaintiff, and estimated by defendant's engineers, and upon which eighty per cent of the estimates had been paid to the plaintiff, amounted to the sum stated in excess of the sums actually paid by the defendant to the plaintiff. While I am not able, from the want of data in the record, to verify this proposition, I am at an equal loss, for the same reason, to arrive confidently at a different result. This finding also involves the proposition that the work was left unfinished by the plaintiff, and this apparently in two aspects: 1. That one, or more, of the subdivisions of the work was left unfinished and for which no estimate was made in favor of the contractor by the defendant; and 2.

That some portion, or all, of the work which had been estimated, and upon which the contractor had received eighty per cent, was in fact incomplete. In this view, the first predicate must be affirmed, as there is undoubtedly evidence to support it; but as to the second, assuming the unfinished character of those portions of the work which had been estimated for and inspected, it must be disapproved, if we apply the same principles of law and construction to the contemporaneous acts of the defendant and its agents that we have meted to the adverse party, then we must hold on this point in favor of the plaintiff.

II. The second cause of action arises upon the allegation of the plaintiff that the first mile of the canal was to have been thirty feet wide at the bottom, and no more, but that afterwards the defendant required it to be constructed thirty-one feet wide, which was done accordingly, at an extra expense of $500, which amount is claimed of defendant.

To this claim the defendant makes two answers: 1. A general denial; 2. That on November 16, 1882, the plaintiff presented his estimate for work on section 1, in which he claimed to have excavated 23,066 cubic yards in the west 5,000 feet in the first mile, and to have removed fifty-one cubic yards of earth more than 100 feet, which was agreed to, and that he was entitled therefor to $3,460.41, of which 80 per cent was then due, and the balance to become due when the work was completed, and the plaintiff had fully complied with his contract, in accordance with which the defendant paid the plaintiff the 80 per cent of the sum stated as due.

This issue the court found for the defendant, and the finding is sustained upon the second defense set up in the answer.

III. The third finding of the court arises upon the plaintiff's third cause of action, that, by the contract, he was to construct all embankments at and near the excava-

tions for the canal, and that the work was so commenced, but that subsequently the defendant disregarded the terms of the contract, and directed the embankments to be constructed with a projection or berme on each side of six feet, and they were so altered, removed, and constructed, which was extra work, involving the removal of 258,000 cubic yards of earth at three cents per yard, and was charged accordingly at the sum of $7,740 to the defendant.

To this cause of action the defendant denies that by the terms of the contract the plaintiff was to construct all embankments at and next to the excavations thereof, but avers that the plaintiff agreed to construct the canal in a good and workmanlike manner, which required the leaving of a berme between the excavation and embankment of at least four feet.

This issue the court found generally for the defendant.

There is a considerable amount of testimony contained in the bill of exceptions as to whether the provision of the 10th specification, that "the entire work should be done in a good and workmanlike manner under the direction of the company and its engineer," as applied to this specific work, or to that of a like character, in its scope and meaning comprehended that a berme should be constructed as an addition to the embankments in order to complete the whole.

Much of the testimony was not strictly admissible under the issues formed, and it is doubtful if any of it was. Were the court left to the construction of the contract, it would find difficulty in reconciling the conflicting rules which have been recognized in the construction of canals and public works for commercial purposes, and applying them to works of the present character. While it is not improbable that modern engineering would require a berme in the banks of canals constructed for commercial or mechanical improvement where such banks are formed partly by excavation and partly from the assembled earth, it is not believed that the same rule prevails in the construction of ir-

rigating canals in western states; and the fact is suggestive
that the present improvement occupies a station, geographic-
ally and mechanically something between the two extremes.
But whether fairly admissible or otherwise, there was evi-
dence submitted that a portion of the canal was constructed
without a berme bank and that dissatisfaction was occasioned
to the Water Supply Company on account of this and
other matters of construction, and that a committee of the
directors of that company was charged with the inspec-
tion and consideration of these matters of difference and
complaint; that upon the committee conferring with the
plaintiff, he claimed that the engineer, who had laid out the
work, had not required the banks to be constructed with a
berme, and that the specifications did not provide for it,
but that he finally conceded the point, and agreed to con-
struct the remaining portion with a berme of four feet—
the committee having at first insisted on one of six feet.
The testimony of R. L. Downing, one of the committee,
states that at said conference the plaintiff and the commit-
tee compromised upon a four-foot berme, the plaintiff at
first claiming extra pay, but finally agreed that he would
construct it, of that dimension, without extra pay.  The
witness stated that he thought that the president and the
committee of the company "kind of conciliated things by
agreeing to advance the contractor some money, and allow
him to go on with the work."  The testimony of the wit-
ness Switz, a director of the company and member of the
committee, is to the same effect, though not so explicit and
positive, and that of E. C. Calkins, the president of the
company, is corroborative of both.  There was, therefore,
evidence before the court to sustain its findings upon the
third cause of action.

IV.  The fourth finding of the court is upon the issue
formed upon the fourth cause of action, alleging that at
the time the plaintiff entered upon the contract the line of
the canal was laid out to be constructed around a large

sand hill, and by direction of the defendant so much of the
line was abandoned and a new one laid out, for the con-
struction of the canal, by a deep cut through the sand hill,
and through earth and material more difficult and expen-
sive to move than that of the original line, which was so
constructed by order of defendant, involving an excavation
of 4,000 cubic yards of earth, which was charged at thirty-
five cents per yard as extra work, amounting to $1,400.

To this the defendant answered that the line was
changed from a heavy cut of one-half of a mile, around a
hill, to a deep cut of a shorter distance into a ravine; that
it cost no more per cubic yard to excavate upon the new
line than upon the original, but that the plaintiff demanded
as extra compensation for the change $200, which was
paid him on September 22, 1883, in full satisfaction of the
claim.

The facts of this claim by the plaintiff, and the settle-
ment and payment in full by the defendant, are sworn to
by the president of the company in his testimony, and, al-
though there is conflicting testimony by the plaintiff, the
finding of the court is sufficiently sustained.

V. The fifth finding of the court is upon the fifth cause
of action, that the defendant neglected and refused to lay
out and specify, and to stake out and cross-section, the
points of the Union Pacific railroad crossing where exca-
vations and fills were to be made on the line of the canal
until after the plaintiff had finished that portion of the
line and moved his teams and workmen to other and dis-
tant parts, requiring a return to the points, with material
and men and the excavation of 4,000 cubic yards of earth
at twenty cents per yard, at an additional expense, and the
completion of it at greater cost, to the amount of $800.

To which the defendant answered, admitting that the
work upon the excavations for the crossings of the Union
Pacific railroad was not ready at the time that the adjacent
portions of the line were excavated, but that the defendan

was compelled to await the construction of the railway company's bridge, and that no delay was caused by or through its fault, but such delay was an unavoidable incident of the work plaintiff had undertaken to do.

II. That it is wholly untrue that the plaintiff removed 4,000 cubic yards of earth at said crossing, or that it was worth any greater sum than nine cents per yard.

There is evidence on the part of the plaintiff tending to prove this cause of action. I am unable to find any on the part of the defendant applicable to its defense, except that which establishes the fact that the plaintiff, upon the completion of that section of the work in which the railroad crossings were, made out and presented his claim, for an estimate and payment thereon, of *nine* cents per cubic yard, which he received in full of 80 per cent of the compensation for the excavation and construction of that section.

It was upon this evidence, doubtless, that the court found the issue for the defendant, and it sufficiently sustains the finding.

VI. The sixth finding of the court arises upon the sixth cause of action, alleging that the portion of the work lying between stations 705 and 708–2 of the line of the canal was through a deep run, or draw, in the surface of the land, through which it was intended to conduct a flume, not included in the contract, but which, at the request of the defendant, the plaintiff filled and constructed the canal across the same, placing 7,000 cubic yards in embankments, at twenty-five cents per yard, which was extra work, performed on that account, and charged to defendant in the sum of $1,750, which was accepted and a reasonable sum agreed to be paid therefor.

The answer of the defendant admits the change from flume to fill, in the original plan of construction, between the stations 705 and 707–2, and alleges that it had the right, under the contract, to vary the plan and line of the work,

and that the plaintiff solicited the change and the construction of the work on the fill, which was accorded, and for which he made no extra claim, or charge therefor, and that it was not worth, for each cubic yard, a greater sum than nine cents; and for a second answer to said sixth cause of action, that it had settled and accounted with the plaintiff, in full, for the work done on that portion of the line of the canal.

The evidence of the plaintiff tends to prove this cause of action, and all that tends to support the defense is applicable to the settlement with the plaintiff for that portion of the work. It does appear that that portion was regularly estimated to him and the payment thereon accepted as in full of 80 per cent of his pay therefor. This is held to sustain the finding of the court.

VII. The seventh finding of the court is upon the seventh cause of action for changes from flume to fill between stations 744 and 748, upon the same grounds of action and defense as those of the sixth, just considered, and is held accordingly.

VIII. The eighth finding of the court is upon the eighth cause of action for changes from flume to fill between stations 824 and 830–2, upon like grounds of action and of defense as those of the sixth and seventh, last considered, and is held accordingly.

IX. The ninth finding of the court is upon the ninth cause of action that, by his contract, the plaintiff was required, in making the slopes to excavations, to construct them as smooth as he conveniently could with plows and scrapers only, in the common course of excavation, and that the banks of the first five miles were sloped accordingly. That in the remaining eleven miles, at the special instance of defendant, he caused the banks to be sloped at an extra expense of $200 per mile, which was extra work, amounting to $2,200, and was accepted by defendant and a reasonable sum agreed to be paid therefor.

The answer of the defendant to this cause of action was a general denial.

It appears from the evidence on the part of the plaintiff, that in the construction of the first five miles of the canal, while the work was being done under the supervision of the original engineer, Buckley, and his assistant, Davidson, the contractor was only required to finish off the slopes of excavations in such manner as was commonly done with plow and scraper; but that, subsequently, when these engineers were superseded on the remaining portions of the work, he was required by other engineers to finish the slope of the excavations by hand labor, with mattocks, at an increased expenditure and cost. There is little conflict of testimony on this point. It was contended by the engineers then in charge that in that way only would the construction of the canal be finished in a workmanlike manner; while, by the testimony of engineer Buckley, the work could be finished in a workmanlike manner by the use of plough and scraper merely. This difference of opinion may possibly be reconciled by the difference in education and experience of the engineers, in the high or low latitudes of their past labors, and the difference in the waterways they may have constructed. But the court was doubtless controlled in its opinion by the satisfactory evidence that the plaintiff, after resisting the requirement to change the manner of finishing the slopes, finally acceded to the demand of the engineer in charge and finished them as required, accepting the estimates and pay for the work, to the extent of 80 per cent of the amount, without protest or claim for extra compensation on the grounds of the present cause of action.

Viewed in relation to the other issues and facts of the case, yet, not without hesitation, I reach the conclusion that such finding of the court must be upheld.

X. The tenth finding of the court is upon the plaintiff's tenth cause of action, that during the month of November,

1882, while in the prosecution of the contract, the defendant refused to lay out and cross-section the line of the work so that he could proceed without delay, but stopped the work, while he had men and means employed at a rate of wages which was subsequently increased, on account of the delay, when the plaintiff was allowed to resume the prosecution of his contract, on account of which he claims $4,000 damages.

The answer of the defendant is, that after the construction of the first section, the contractor was to wait before prosecuting the remainder of the work till the city of Kearney, which had promised to donate to the improvement a certain sum of money, should inspect the first section, and ascertain if a sufficient flow of water from the Platte river could be obtained by the means used ; and that the delay complained of was in waiting for the inspection, and its results, which the plaintiff had agreed to. The defendant also makes a general denial of this cause of action.

The sixth specification of the contract provides for the acceptance and approval of section 1 by the mayor and council of the city of Kearney, and if that section shall not be so accepted before October 30, 1882, the time for the completion of the sections from 2 to 9 "inclusive shall be extended so as to give seven full months' time between the date of the acceptance of section 1 and the final completion of the remainder."

This seems, therefore, to have been a necessary delay, both anticipated and provided for, and for which the defendant was not directly or remotely responsible; and the losses, if any, incident to it, were risks which the plaintiff took upon himself with the considerations of his contract. There is no evidence going to show *laches* in the delay on the part of the defendant.

The tenth finding of the court is therefore sustained.

XI. The eleventh finding of the court is upon the issues formed by the 11th, 12th, 13th, 14th, and 15th clauses of

the defendant's answer, which is treated as a set-off or counter-claim; that the defendant had paid to the plaintiff the sum of $6,853.50, advanced on account of work promised to be done and executed, but which he failed to do.

It is not clear in what precise sense the words of the allegation are used. But they are probably to be understood that the entire work contracted to be performed was not fully completed, and that to finish it, complete, would cost the amount stated. In this sense it must have been considered by the trial court.

The twelfth clause is not of the nature of counter-claim, but of defense against the plaintiff's claim for extra compensation.

The thirteenth clause partakes of the disposition of a counter-claim in setting up that the plaintiff failed to commence the work, or to complete it, according to the terms of the contract; that it was not executed in a good and workmanlike manner, nor the banks as high as required, nor the proper slopes given to them, nor the proper width at the top, and that the work was of the less value of $10,000, which it would cost to complete it according to contract.

It is undoubtedly true, as shown by a preponderance of testimony, that the plaintiff failed to fully complete the canal. According to the testimony of the president of the Water Supply Company, William Price, son and agent of the plaintiff, in the spring of 1884, was in charge of the work for the plaintiff, and informed the president of the company that the work was then completed and ready for an estimate; that the company's engineer was instructed to inspect the work and if completed to prepare an estimate, and if not to inform the contractor, or his agent, in what respect it was not satisfactory, which was done as stated, and Mr. Price, the agent, then refused to do anything more with it, but left it under these circumstances.

There is also evidence which tends to prove that the de-

fendant completed the section or subdivision which it is claimed the contractor, through his agent or foreman, left unfinished, and for which no estimate was ever made in favor of the contractor, and for which it is not claimed that he was ever paid. No estimate of the entire cost of this section appears to have been made by the company or any of its engineers. Had it been estimated, it is obvious that, under the terms of the contract, the amount which it cost the company to complete it, if that was less than the cost of the whole work, should have been deducted from the total cost, and the balance passed to the credit of the contractor; in other words, if it cost the defendant so much more than nine cents per cubic yard to excavate and form the embankments of that portion of the work which it claims to have completed, the overcost would overbalance the sum which that portion of the same done by the plaintiff would amount to at the contract price, and nothing would be due him therefor; and if, in addition to consuming the amount earned by the plaintiff, the extra work of defendant amounted to an additional sum, that amount would be chargeable to the plaintiff to be taken from the reserved twenty per cent; but in order to have made good its claim to this the company should have caused the whole of that section or subdivision of the work to have been concisely measured and estimated, as well at the contract price as at the actual cost of that part constructed by it.

It would seem that equity required this duty of the defendant, and that while allowing the contractor nothing for constructing the body of the work of this section, to charge against him the full amount expended in completing it would be an injustice to the plaintiff.

But it is obvious that the finding of the trial court, which we are considering, was based chiefly upon the claim of the defendant that the entire work which had been constructed by the contractor, estimated by the engineers, agreed to by the parties, and 80 per cent of its cost paid

and accepted, was subsequently found in a condition of incompleteness, or of dilapidation, that required some $10,000 to place in a good condition and repair.

Applying the same rules of equitable construction to this claim, made by the company, that we have enforced against the contractor's claim for extra compensation for the construction of the work, and it cannot be allowed.

The eleventh finding of the court below is, therefore, reversed, and this court finds that there is due from the appellee to the appellant on account of the 20 per cent of compensation, reserved under the contract, for the completion of the work as estimated to him the sum of $4,475.89, with interest thereon from May 1, 1884, and judgment therefor will be entered, providing also a lien on the appellants' works as prayed.

JUDGMENT ACCORDINGLY.

THE other judges concur.